UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| ERVIN J. THOMPSON, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 4:14-cv-01987-JCH |
| KYLE WEBB, et al., | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment, filed April 13, 2016. (ECF No. 52.) Plaintiff has filed a Response (ECF No. 60), and the matter is ready for disposition.

## BACKGROUND

On November 26, 2014, Plaintiff Ervin Thompson filed the instant action against Defendants Kyle Webb, Dustin Peters, Jordan Villmer, Joseph Gile, and Randall Owens, in their individual and official capacities. (ECF No. 1.) On February 5, 2015, the Court granted Plaintiff leave to file an amended complaint. (ECF No. 12.) In his amended complaint, Plaintiff asserts claims of excessive force and conspiracy under 42 U.S.C. §§ 1983, 1985(3), and 1986. (ECF No. 14.) As in his original verified complaint, Plaintiff alleges the following facts.

On January 14, 2013, Plaintiff, an inmate at the Eastern Reception and Diagnostic Correctional Center ("ERDCC"), was falsely accused of assaulting a female Correctional Officer ("CO"). Plaintiff was taken to administrative segregation ("ad seg"), where Correctional Officers Peters, Gile, and Villmer (hereinafter, the "Officers") escorted Plaintiff to a prison cell. Upon entering the cell, and while Plaintiff's hands were handcuffed behind his back, the Officers repeatedly punched and kicked Plaintiff in the head and face and slammed his head into the

1

concrete floor.  When Plaintiff asked the Officers why they were beating him, Villmer responded, "You tryed [sic] to rape my sister…" *Id.* at 1-2.  The Officers proceeded to remove Plaintiff's clothes and exited the cell.  Shortly thereafter, Webb, the Officers' supervisor, came to the cell door and issued Plaintiff a Conduct Violation for refusing to comply with a strip search.  Plaintiff was taken to the hospital where he was diagnosed with a concussion, fractured teeth, a laceration to the face, an acute traumatic cervical strain, and several contusions to the head and face.  While Plaintiff was at the hospital, Owens, an ERDCC investigator, took a single photograph of a lump on Plaintiff's forehead, but did not photograph any of Plaintiff's other injuries.  Plaintiff subsequently learned that the Officers had falsely reported that he had sustained injuries because he hit his head on the metal toilet in the cell in ad seg.  *Id.* at 2-4.

As the Court construes Plaintiff's pleadings, Plaintiff asserts excessive-force claims against the Officers under section 1983.  He also asserts conspiracy claims against the Officers and Webb under section 1985(3), conspiracy claims against all Defendants under section 1983, and a conspiracy claim against Owens under section 1986.  *Id.* at 5-6.  On May 14, 2015, the Court dismissed Plaintiff's claims against Defendants in their official capacities.  (ECF No. 27.)  As mentioned above, Defendants now move for summary judgment.  (ECF No. 52.)  The summary judgment record before the Court reveals the following.

During his deposition, Plaintiff testified that he complied with the strip search, that he never hit his head on the toilet during the incident, and that he sustained injuries because the Officers beat him.  He further testified that he believes that the Officers conspired to beat him and to fabricate their account of the event because they thought he had attacked the female CO, and that before entering the cell Webb had told the Officers "to not have too much fun."  Plaintiff also testified, however, that Webb would have had no way of knowing if he hit his head

on the toilet because Webb wasn't in the cell. Plaintiff did not contest the Conduct Violation he received through the ERDCC internal appeals process, but he did file internal grievances regarding the matter. (ECF No. 54.1 at 5-6, 8-11, 15, 18, 25.) Plaintiff's medical records indicate that he was admitted to the hospital shortly after the incident, and that his condition was deemed "emergent." (ECF No. 60.2 at 1.) The records also indicate that he sustained a minor concussion without loss of consciousness; contusions to the face, head, and forehead; an acute traumatic cervical strain; a laceration to the face; an "[a]lleged [a]ssault"; and two fractured teeth. (ECF No. 60.2 at 1.)

According to the Officers' reports regarding the incident, Plaintiff refused to comply with ERDCC protocol which requires officers to strip search offenders who are placed in ad seg. When Plaintiff resisted and pulled away, the Officers took him to the floor, at which time his face came in contact with the toilet in the cell, thereby causing his injuries. Once Plaintiff was on the ground he complied with the remainder of the search. The use of force inside the cell was not captured on video. (ECF No. 55.) The Conduct Violation Report issued against Plaintiff states that he "refused to comply with [Villmer's] directives…in direct violation of Rule 20.1." (ECF No. 60.2 at 4.) The Disciplinary Action Report demonstrates that Plaintiff was found guilty of the Conduct Violation, and that he was sent to disciplinary segregation from January 16 to February 4, 2013. (ECF No. 54.3.)

According to ERDCC reports, prior to the Officers' strip search of Plaintiff, the CO who was assaulted had relayed a "jumbled radio transmission" to all ERDCC radio units seeking assistance. (ECF Nos. 14 at 7; 60.2 at 11-12.) Plaintiff testified that he did not hear the content of the radio transmission. (ECF No. 54.1 at 16.) In their Responses to Plaintiff's requests for interrogatories, the Officers attested that they were wearing their radio units that day. The

3

Officers also attested, however, that at the time of the strip search they were not aware that Plaintiff had been accused of assaulting the CO. (ECF Nos. 54.4, 54.5, 54.6.)

## SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment shall be granted if the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, a court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences that may be drawn from the record. *See Hott v. Hennepin Cnty., Minn.*, 260 F.3d 901, 905 (8th Cir. 2001) (citation omitted).

The moving party bears the burden of showing the absence of a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). When a summary judgment motion is properly support by evidence, the burden then shifts to the non-moving party who must set forth affirmative evidence showing that there is a genuine issue for trial. *See id*. at 256-57. The non-moving party may not rest on the allegations in his pleadings, but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. *See* Fed. R. Civ. P. 56(c); *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002). Self-serving, conclusory statements without support are not sufficient to defeat summary judgment. *See Ballard v. Heineman*, 548 F.3d 1132, 1135 (8th Cir. 2005); *Armour & Co., Inc. v. Inver Grove Heights*, 2 F.3d 276, 279 (8th Cir. 1993).

## DISCUSSION

**I. Excessive Use of Force**

The "core judicial inquiry" in a suit for excessive use of force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to

4

cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam) (citation and quotations omitted). "Factors to be considered in deciding whether a particular use of force was reasonable are whether there was an objective need for force, the relationship between any such need and the amount of force used, the threat reasonably perceived by the correctional officers, any efforts by the officers to temper the severity of their forceful response, and the extent of the inmate's injury." *Treats v. Morgan*, 308 F.3d 868, 872 (8th Cir. 2002) (citing *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). In considering an excessive-force claim, the Court is to weigh the prisoner's testimony, the extent of the prisoner's injury, and whether the "security threat reasonably perceived by defendants, '[would] support a reliable inference' of an unnecessary and wanton infliction of pain." *Santiago v. Blair*, 707 F.3d 984, 990 (8th Cir. 2013) (quoting *Johnson v. Bi-State Justice Ctr./Ark. Dep't Corr.*, 12 F.3d 133, 136-37 (8th Cir. 1993)). In weighing these factors, however, the Court is required to "avoid[ ] the improper resolution of credibility issues." *Id.*

Defendants argue that Plaintiff's excessive-force claims against the Officers fail as a matter of law because the undisputed record shows that the use of force was a necessary response to Plaintiff's combative and resistant behavior. Relying on *Edwards v. Balisok*, 520 U.S. 641, 643 (1997), Defendants further argue that, because Plaintiff did not contest the Conduct Violation through the ERDCC internal appeals process, he cannot now claim that he complied with the Officers' instructions or that the force used was excessive. (ECF No. 53 at 2-4.)

To begin, the Court finds Defendants' reliance on *Balisok* misplaced. In *Balisok*, a state prisoner challenged the validity of the disciplinary procedures used to deprive him of good-time credits, based upon Fourteenth Amendment due process grounds. *Balisok*, 520 U.S. at 643. The Supreme Court held that, in accordance with *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), a

5

claim for damages challenging the procedures used in prison disciplinary proceedings, which necessarily implies the invalidity of the punishment imposed, is not cognizable under section 1983 until the disciplinary conviction has been set aside. *Id.* at 645-48. Here, Plaintiff alleges that the Officers' use of force amounted to cruel and unusual punishment in violation of his Eighth Amendment rights, and Plaintiff's allegations, unlike the plaintiff's in *Balisok*, do not necessarily implicate the fact or length of his sentence.[1] *See Sheldon v. Hundley*, 83 F.3d 231, 234 (8th Cir. 1996) (prisoners who challenge disciplinary rulings that do not lengthen their sentence are probably outside the habeas statute and able to seek damages under § 1983 without showing favorable termination in authorized state tribunal or federal habeas court); *see also Henson v. Brownlee*, 2 Fed. Appx. 635, 637 (8th Cir. 2001) (unpublished per curiam) (plaintiff's excessive-force claim was not *Heck*-barred because it did not challenge fact or length of plaintiff's confinement).

The Court further concludes that genuine issues of material fact exist as to whether the Officers' use of force against Plaintiff was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. In Plaintiff's original verified complaint—which this Court treats as an affidavit for summary judgment purposes, *see Hartsfield v. Colburn*, 371 F.3d 454, 456 (8th Cir. 2004) (citing 28 U.S.C. § 1746)—and also in his deposition testimony, Plaintiff contends that he complied with the strip search; that the Officers beat him, thereby causing his injuries; and that he did not hit his head on the toilet in the

---

[1] In his original complaint, Plaintiff indicates that he seeks compensatory and punitive damages for his injuries. (ECF No. 1 at 14.) As best as the Court can tell from both the original and amended complaints, Plaintiff does request that the Conduct Violation be stricken. In addition, there is nothing in the record before the Court that suggests Plaintiff's Conduct Violation affected the length of the sentence he is currently serving, or that he was convicted on separate charges related to his purported resistant behavior.

cell. Plaintiff's medical records confirm that Plaintiff sustained significant injuries during the incident in question. Because Defendants have not produced video footage of the incident or any other dispositive evidence directly refuting Plaintiff's allegations and testimony, the Court finds that genuine issues of material fact exist regarding Plaintiff's compliance with the strip search, the extent of force used by the Officers, and the manner in which Plaintiff sustained his injuries. *See In re Prempro Prods. Liab. Litig.*, 586 F.3d 547, 572 (8th Cir. 2009) (court may not make credibility determinations or weigh evidence).

Defendants also assert qualified immunity as an affirmative defense. (ECF No. 53 at 10-11.) "To defeat a claim of qualified immunity, a plaintiff…must present sufficient facts to show that the officer's conduct violated a constitutional right, and he also must establish that the constitutional right was clearly established." *Chambers v. Pennycook*, 641 F.3d 898, 904 (8th Cir. 2011). As discussed above, there is affirmative evidence in the record that raises genuine issues of material fact as to whether the Officers' use of force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. In addition, the law is well-established that a malicious and sadistic use of force by a prison official against a prisoner, done with the intent to injure and causing actual injury, is enough to establish a violation of the Eighth Amendment's cruel and unusual punishment clause. *See Wilkins*, 559 U.S. at 37; *Whitley v. Albers*, 475 U.S. 312, 319 (1986); *Johnson v. Blaukat*, 453 F.3d 1108, 1112 (8th Cir. 2006) ("The Eighth Amendment bars correctional officers from imposing unnecessary and wanton pain on inmates…"). Defendants are therefore not entitled to summary judgment on the grounds of qualified immunity.

In view of the foregoing, Defendants will be denied summary judgment on plaintiff's excessive-force claims.

## II. Conspiracy

### A. *Sections 1985(3) and 1986*

To prove a civil rights conspiracy claim under section 1985(3), a plaintiff must demonstrate: (1) that the defendants conspired, (2) with the intent to deprive him, either directly or indirectly, of the equal protection of the laws, or equal privileges and immunities under the laws, (3) an overt act in furtherance of the conspiracy, and (4) that he or his property was injured, or he was deprived of exercising any right or privilege of a citizen of the United States. *See Barstad v. Murray Cnty.*, 420 F.3d 880, 887 (8th Cir. 2005) (citation omitted). "The language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Id.* at 758 n.3.

Defendants argue that Plaintiff's conspiracy claims against the Officers and Webb under section 1985(3) are subject to summary judgment due to Plaintiff's failure to demonstrate that the Officers were motivated by purposeful, class-based discrimination. (ECF No. 53 at 4.) In response, Plaintiff contends that he has "set forth evidence to prove the linking of the officers' minds and motive to beat [him] and falsify the events." (ECF No. 60 at 4.) Specifically, Plaintiff argues that "[t]he radio call established Defendants['] motive to beat Plaintiff," and that the Officers and Webb denied hearing the call so that "they may claim they had no motive to beat [Plaintiff]." *Id.* at 3-4. Plaintiff further argues that "Webb assigned [him] to a single-man cell to allow the other officers to secretly and freely beat [him]." *Id.* at 4.

This Court concludes that Plaintiff has neither alleged nor offered any evidence of a class-based animus, and that he has thus failed to establish a genuine issue of material fact as to the required second element of his section 1985(3) claims. The Court further concludes that,

8

because Plaintiff's conspiracy claims against the Officers and Webb under section 1985(3) fail, his claim against Owens under section 1986 must also fail. *See* 42 U.S.C. § 1986 (imposing liability on individuals who have knowledge of conspiracy prohibited by § 1985 and have power to prevent it, but fail to do so); *Kaylor v. Fields*, 661 F.2d 1177, 1184 (8th Cir. 1981) ("A cause of action under § 1986 is dependent on a valid claim under § 1985"). Therefore, Defendants will be granted summary judgment on Plaintiff's conspiracy claims under sections 1985(3) and 1986.

### B. Section 1983

To prove a conspiracy claim under section 1983, a plaintiff must show: "(1) that one or more persons conspired to deprive him of his constitutional rights; (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act injured the plaintiff." *White v. McKinley*, 519 F.3d 806, 814 (8th Cir. 2008). The first prong requires evidence of specific facts that show a "meeting of the minds" among conspirators. *Barstad*, 420 F.3d at 887. To "advance past the summary judgment stage," the plaintiff must "allege with particularity and specifically demonstrate material facts that the defendants reached an agreement." *Reasonover v. St. Louis Cnty., Mo.*, 447 F.3d 569, 582 (8th Cir. 2006) (quotation and citation omitted).

Defendants argue that Plaintiff's conspiracy claims against all Defendants under section 1983 fail because Plaintiff has provided no evidence showing that there was a meeting of the minds. (ECF No. 53.) Plaintiff counters that the medical records documenting his injuries demonstrate that the Officers falsified their reports of the event. (ECF No. 60 at 7-8.) Plaintiff further argues that Webb's comment to the Officers "to not have too much fun" and the false Conduct Violation he issued to Plaintiff show that Webb was involved in the conspiracy. Finally, Plaintiff argues that that there is "proof of direct and tacit communication" between

Owens and the other defendants because Owens took only one photograph of Plaintiff's forehead in order to corroborate the Officers' and Webb's story. *Id.* at 8.

The Court concludes that there is insufficient evidence in the record from which a reasonable inference can be drawn that all Defendants reached a mutual agreement to fabricate a cover-up story. On the contrary, Plaintiff's deposition testimony indicates that he "assum[ed]" the Officers had conspired to beat him. (ECF No. 54.1 at 21.) Similarly, when questioned by opposing counsel as to why he believed Defendants had fabricated a cover-up story, Plaintiff responded, "pretty much all of their statements about the incident were similar." *Id.* at 21-22. Furthermore, the investigation report demonstrates that Owens took multiple photographs of Plaintiff's face and head following the incident. (ECF No. 55 at 14.) Plaintiff's speculation and conjecture, without more, are insufficient to overcome Defendants' properly-supported summary judgment motion with respect to his conspiracy claims. *See White*, 519 F.3d at 816 (plaintiff need not show that each participant knew exact limits of illegal plan, but plaintiff must show evidence sufficient to support conclusion that defendants reached agreement to deprive plaintiff of constitutionally guaranteed rights). Therefore, Defendants will be granted summary judgment on Plaintiff's conspiracy claims under section 1983.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 52) is **GRANTED in part**, and **DENIED in part**.

**IT IS FURTHER ORDERED** that Plaintiff's conspiracy claims against Defendants are **DISMISSED with prejudice**.

**IT IS FURTHER ORDERED** that Kyle Webb and Randall Owens are **DISMISSED** as defendants from this matter.

Dated this   28th   day of June, 2016.

                              /s/     Jean C. Hamilton
                              UNITED STATES DISTRICT JUDGE