UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ERVIN J. THOMPSON, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:14-CV-01987-JCH |
| | ) | |
| KYLE WEBB, et. al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF ERVIN THOMPSON'S TRIAL BRIEF**

This case presents a straightforward issue:

Did Defendants Dustin Peters, Joseph Gile, and Jordan Villmer—correctional officers at the Easter Reception, Diagnostic and Correctional Center ("ERDCC")—use excessive force against Plaintiff Ervin Thompson—an inmate at ERDCC—when they took him down to the ground while handcuffed in a single man cell?

The evidence will show that Defendants' actions were unreasonable, malicious, and sadistic because Defendants used disproportionate and excessive force in retaliation for Plaintiff's participation in an alleged assault on a correctional officer.   Thompson requests that a jury assess his damages and award compensatory and punitive damages in a fair and reasonable amount.

**SUMMARY OF THE EVIDENCE**

At all relevant times, Plaintiff was an inmate of the Missouri Department of Corrections at the ERDCC.  At all relevant times, Defendants Villmer, Gile, and Peters were correctional officers at ERDCC.

On January 14, 2013, Plaintiff was accused of an alleged assault against a correctional officer in the ERDCC kitchen area.  During the assault, the correctional officer relayed an emergency radio transmission—known as a 10-5 call—to all ERDCC radio units.  Within minutes, the prison yard was placed on lockdown and all radio traffic was limited to emergencies only.  Plaintiff was ultimately apprehended for the alleged assault.  A mere 15 minutes after the alleged assault began, Plaintiff was brought to administrative segregation ("Ad. Seg.") and into Defendants' custody.

Defendants Peters and Villmer were working their regularly scheduled shift at Ad. Seg. when Plaintiff arrived.  Defendant Gile came from another section of the prison to assist.  Based on their conversation with the officer who escorted Plaintiff to Ad. Seg., the Defendants knew that Plaintiff was "Univ" or "Under Investigation."  Defendants were wearing their radios at all relevant times that day and by Defendant Gile's own admission they all should have heard any emergency call come across.

After Plaintiff arrived at Ad. Seg., Defendants escorted Plaintiff into a single man cell consisting of a metal bunk, sink, and toilet with concrete walls and floors.  Upon entering the cell, Defendant Peters partially shut the door.  Defendants Gile and Villmer escorted Plaintiff to the back of the cell where they took Plaintiff down to the floor.  While Plaintiff was on the floor, Defendants repeatedly kicked and punched Plaintiff, grabbed him by the hair, and slammed his head into the floor multiple times.  While Plaintiff lay bloodied, Defendant Peters cut off Plaintiff's clothes.  Plaintiff remained handcuffed throughout the duration of the incident.  Thereafter, Defendants left the cell.

Shortly after Defendants left the cell, the Ad. Seg. nurse determined Plaintiff's injuries were so severe that he needed to be taken to the hospital.  While being escorted to the hospital,

Plaintiff overheard a correctional officer jokingly state "a lot can happen in a cell full of concrete and metal."

While Plaintiff was at the hospital, Defendants completed their respective incident reports concerning the use of excessive force against Plaintiff.  The reports were edited by a lieutenant and shift commander to ensure Defendants' stories were consistent.  The reports are substantively identical in nearly all respects.

As a result of Defendants' excessive use of force, Plaintiff suffered two broken teeth, a laceration to the face, several contusions to the face, forehead, and head, a minor concussion, and an acute traumatic cervical strain.  Plaintiff required two stitches in his lower lip.  To date, Plaintiff suffers from frequent migraines, his teeth hurt when eating or drinking, and he suffers from emotional distress including paranoia, embarrassment, humiliation, and depression.

## LEGAL AND FACTUAL ISSUES FOR TRIAL

The sole issue requiring resolution by the jury is whether Defendants used excessive force when they took Plaintiff to the floor in a confined space and kicked and punched Plaintiff and slammed his head into the ground thereafter.

"When jail officials are alleged to have used excessive force against a prisoner, 'the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *U.S. v. Miller*, 477 F.3d 644, 647 (8th Cir. 2007).  "The Court must consider the need for the application of physical force; the relationship between the need for physical force and the amount of force applied; and the extent of injury suffered by the inmate." *Estate of Davis by Ostenfeld v. Delo*, 115 F.3d 1388, 1394 (8th Cir. 1997).

Here, the evidence will show that Defendants used excessive force in a malicious and sadistic manner to retaliate against Plaintiff for his role in an alleged assault of a prison guard prior to his admission into Ad. Seg.

First, the evidence will show that the need for force was minimal and the amount used outweighed its need.  At the time of the excessive force incident, Plaintiff was 19 years old, 5'8 and approximately 126 pounds.  His hands were handcuffed behind his back.  The Defendants outnumbered Plaintiff three to one.  What is more, the four men were in a cramped single man cell where the only plausible option for a takedown risked serious injury to any or all of the parties.  After takedown, Defendants punched and kicked Plaintiff and slammed his head into the ground repeatedly.  Accordingly, the force applied was excessive and greatly outweighed its need.

Second, the evidence will also show that Plaintiff's injuries are extensive.  Plaintiff suffered two broken teeth, a laceration to the face, several contusions to the face, forehead, and head, a minor concussion, and an acute traumatic cervical strain of the neck.  Plaintiff required two stitches in his lower lip.  To date, Plaintiff suffers from frequent migraines, his teeth hurt when eating or drinking, and he suffers from emotional distress including paranoia, embarrassment, humiliation, and depression.  The amount of force necessary to cause such injuries belies the Defendants claim that they were merely attempting to effectuate a routine strip search.

Third, the evidence will establish that Defendants applied force maliciously and sadistically to cause harm to Plaintiff instead of in a good-faith effort to effectuate a strip search. Plaintiff was admitted to Ad. Seg. after allegedly assaulting a correctional officer.  Immediately preceding Plaintiff's arrival, the yard was on lockdown and radio traffic was limited to

emergencies only.  Defendants were wearing their radios and, according to Defendant Gile's own admission, should have heard the emergency call.  Furthermore, mere minutes after the attack, after the emergency radio call, and after the yard was put on lockdown,  Defendants were told that Plaintiff was under investigation when he was brought into their custody.  Defendants therefore had reason to believe that Plaintiff was involved in the alleged assault of a correctional officer.  Moreover, after the incident was over,  Defendants had their reports edited by their superiors to create substantively identical versions of the same report.  Defendants thus used excessive force against Plaintiff in a malicious and sadistic manner, not to effectuate a strip search, but rather in retaliation for Plaintiff's alleged role in the assault of a correctional officer minutes prior to his admittance.

For the foregoing reasons, Plaintiff anticipates that he will be able to satisfy his burden of proof at trial and prevail on his section 1983 claim against Defendants for excessive use of force.

## III.    Substantive and Procedural Issues

Plaintiff anticipates putting on himself and Defendants as trial witness.  Except as identified above and in Plaintiff's concurrently filed Motions in Limine, Plaintiff does not anticipate any other substantive or procedural issues at trial.

Respectfully submitted,

THOMPSON COBURN LLP

By:  /s/ Virginia L. Woodfork
    Virginia L. Woodfork #68494MO
    Nino Przulj #68334MO
    One US Bank Plaza
    St. Louis, Missouri 63101
    314-552-6000
    FAX 314-552-7000
    vwoodfork@thompsoncoburn.com
    nprzulj@thompsoncoburn.com

    *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

On June 2, 2017, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF System, which shall send notification of such filing to all counsel of record.

/s/ Virginia L. Woodfork